### Betty Bourne v. Department of Social Welfare

[591 A.2d 79]

No. 89-113

Present: Allen, C.J., Gibson, J., and Peck, J. (Ret.) and Martin, Supr. J., Specially Assigned

Opinion Filed March 29, 1991

*Robert A. Clark*, Vermont Legal Aid, Inc., Rutland, for Plaintiff-Appellee.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Donna Watts*, Assistant Attorney General, and *James Gratton*, Law Clerk (On the Brief), Waterbury, for Defendant-Appellant.

**Gibson, J.** The Department of Social Welfare appeals from a Human Services Board ruling in favor of petitioner Betty Bourne. We reverse.

In May of 1988, petitioner met a Department fraud investigator to discuss allegations that her failure to report some "household income" on her food stamps application constituted an intentional food stamp program violation. At the end of the meeting, petitioner executed a waiver of her right to a hearing on the merits of the alleged violation. Based upon the waiver, the Department disqualified petitioner from receiving food stamps for a six-month period. Because petitioner was no longer receiving food stamps, the disqualification period was postponed until petitioner again became eligible and applied for benefits. Implementation of the penalty is still pending.

Shortly after the disqualification decision was issued, petitioner attempted to rescind her waiver. When the Department denied the request, she petitioned the Board for relief. The Board reversed the Department's refusal to allow rescission of the waiver, holding that (1) it had jurisdiction, and (2) a waiver can be revoked any time before the disqualification period takes effect, provided the Department is not prejudiced. The determinative issue on appeal is whether the Board had jurisdiction.[1]

The governing regulation, 7 C.F.R. § 273.16(f)(2)(ii), provides:

> (ii) No further administrative appeal procedure exists after an individual waives his/her right to an administrative

---

[1] In concluding that it had jurisdiction, the Board relied on 3 V.S.A. § 3091(a), providing in pertinent part:

> An applicant for or a recipient of assistance . . . from . . . the department of social welfare . . . may file a request for a fair hearing with the human services board. An opportunity for a fair hearing will be granted to any individual requesting a hearing because his or her claim for assistance, benefits or services is denied, . . . or because the individual is aggrieved by any other agency action affecting his or her receipt of assistance, benefits or services . . . .

As the Board recognized, 7 C.F.R. § 273.16(f)(2)(ii) preempts § 3091(a) to the extent the two are in conflict. See *Trustees of the Diocese of Vermont v. State*, 145 Vt. 510, 514, 496 A.2d 151, 153 (1985) ("[s]tate laws which 'interfere with, or are contrary to the laws of Congress' are invalidated by the Supremacy Clause of the United States Constitution") (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824)).

disqualification hearing and a disqualification penalty has been imposed. The disqualification penalty cannot be changed by a subsequent fair hearing decision. The household member, however[,] is entitled to seek relief in a court having appropriate jurisdiction. The period of disqualification may be subject to stay by a court of appropriate jurisdiction or other injunctive remedy.

The parties disagree about when a penalty is "imposed": the Department argues that it occurs when the disqualification decision is issued, whereas petitioner contends that it occurs when the disqualification period begins—that is, when food stamps are actually withheld from an individual who has applied and is otherwise eligible for them.

■ It is significant that § 273.16(f)(2)(ii) does not use the phrase "disqualification period." Instead, it provides that no further administrative appeal lies after the waiver is executed and the penalty imposed. In contrast, the regulation consistently uses the phrase "disqualification period" to mean the time period when the penalty is implemented. See *id.*, § 273.16(f)(2)(i)–(iv).[2] For example, the regulation provides that the disqualification period shall be postponed when the recipient is no longer receiving benefits until the individual again applies and is eligible. *Id.*, § 273.16(f)(2)(iii). This distinction in language implies that the time when the penalty is imposed is not identical to the disqualification period. We conclude that the better construction is that a penalty is "imposed" within the meaning of § 273.16(f)(2)(ii) when a waiver has been executed and the disqualification decision is issued. Contrary to petitioner's contention, our conclusion does not leave her without a remedy; after imposition of the penalty, an individual seeking relief is directed to an "appropriate court," see *id.*, § 273.16(f)(2)(ii), which, in Vermont, is the superior court.

_____

[2] Petitioner's citation to § 273.16(f)(2)(iv) is inapposite. Subsection (iv) provides in pertinent part that "[o]nce a disqualification penalty has been imposed against a currently participating household member, the period of disqualification shall continue uninterrupted until completed . . . ." This language merely directs that, in the contemplated circumstances, the penalty is to be uninterrupted; the quoted language does not equate the time when the penalty is imposed with the timing of the disqualification period.

■■ Section 273.16(f)(2)(ii) clearly establishes that no administrative appeal procedure is available after the disqualification penalty is imposed. In the instant case, the Department's decision to disqualify petitioner from receiving food stamps was issued before petitioner applied to the Board for relief. Accordingly, we hold that the Board did not have jurisdiction. Although we therefore do not reach the merits, we are constrained to add that the Department's forms are at best confusing and, in different circumstances, might well violate petitioner's due process rights.[3]

*Reversed.*

---

[3] The Department's waiver forms and correspondence with petitioner variously directed her to the Vermont Supreme Court and to superior court. Clearly, the Department's decision to disqualify petitioner is not directly appealable to this Court. The Department's forms and correspondence also provided conflicting information regarding sources of legal assistance, whether the matter was criminal or civil in nature, and whether signing the waiver constituted an admission of the allegations.